## THE CUMBERLAND AND WESTERNPORT ELECTRIC RAILWAY CO. *vs.* HARRY THOMPSON, By His Next Friend.

*Passenger on Step of Electric Car Struck by Trolley Pole—No Evidence of Carrier's Negligence.*

Plaintiff in boarding one of defendant's electric cars had gotten on the lower step of the rear platform, facing the car, with his hands on the bars and a tin bucket on his left arm, when the car started. After it had gone about 136 feet the plaintiff's head was struck by a trolley pole standing between seven and eight inches from the side of the car. Plaintiff's right side was towards the direction in which the car was going when he got on, and he was struck on the left side of the head. When the car started the plaintiff, being within the alignment of the car, was in such a position that he could not have been struck by the pole, and there was no evidence that the starting of the car caused a change in his position. *Held*, that there was no legally sufficient evidence that plaintiff's injury was caused by the negligence of the defendant in starting the car prematurely before the plaintiff had reached a position of safety.

Appeal from the Circuit Court for Allegany County (HENDERSON, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, and JONES, JJ.

*Benjamin A. Richmond* (with whom were *DeWarren H. Reynolds* and *D. James Blackiston* on the brief), for the appellant. ·

*Arch. A. Young* (with whom were *Robert H. Gordon* and *D. Lindley Sloan* on the brief), for the appellee.

JONES, J., delivered the opinion of the Court.

The appellant in this case is a corporation owning and operating an electric railroad between the towns of Lonaconing and Frostburg in Allegany County, this State; and was sued by the appellee in the Court below for damages for injuries sustained by the latter as the result of an accident which occurred while the appellee was a passenger on one of the cars of the appellant corporation. The *narr.* in the case alleges that about the first day of December, 1904, the appellee, "together with several other persons, was waiting to board one of the cars of the" appellant "at a point near Ocean Mines * * * ," and that when said car arrived at said point, it was stopped by the motorman, an agent" of the appellant, "for the purpose of allowing" the appellee "and the other persons there to board said car; that the motorman on said car motioned" the appellee "to cross over the track and board said car on the opposite side from which he had been standing waiting; that a number of passengers were entering said car; and that" the appellee "while using due care and caution, and without any negligence on his part, was getting on said car, and while he was in the act of going up the steps of said car, and before he had succeeded in entering said car, the agents and servants of the" appellant, "then and there running and operating said car, negligently and wrongfully started said car before" the appellee "had reached a safe position on said car, by reason of which said negligence, and improper starting of said car by said agents and servants the" appellee "was caught between the said car and a pole which was standing dangerously near to and alongside of the track of" the appellant and the appellee "was violently and with great force squeezed between said car and pole and thrown to the ground, by reason of which" he sustained serious injuries which the *narr.* describes. The issues to be tried in the case were presented by the plea of not guilty. At the trial the plaintiff (appellee here) upon the conclusion of the testimony, offered six prayers, the first and sixth of which were modified by the Court and granted; the second was rejected; the third conceded; the fourth

abandoned; and the fifth was granted as presented. The defendant (appellant here) offered eight prayers, the first, second, third and fourth of which were rejected, and the others granted. The result of this action of the trial Court upon the prayers was a verdict and judgment against the appellant. The questions arising upon this appeal are presented by the appellant's exception to such action.

The main contention here has been as to the propriety of the rejection of the appellant's first, second, third and fourth prayers—the granting of any of which would have defeated a recovery by the appellee. The first of these affirmed that the plaintiff had "offered no evidence in this case legally sufficient to entitle him to recover." The others denied the right of the plaintiff to recover because his own negligence had produced, or concurred with that of the defendant so as to directly contribute to producing the accident which caused his injuries. A statement of the evidence, as brief as may be, upon which the parties based their respective prayers will be necessary. That, as disclosed by the record, shows that the appellee is a young man about nineteen years of age and by occupation a miner. In going to and from his work he used the railroad of the appellant. On the day of the accident by which he was injured, he, in company with his brother and a boy by the name of McLuckie, both younger than himself, started for his home from his place of employment and went to the railroad to board a car. With his brother and McLuckie he waited for a car and as one approached the conductor or motorman motioned to them to cross to the opposite side from which they were standing. The three accordingly crossed the track in front of the approaching car, which in the meantime continuing to move on, they found themselves, when it stopped, near to the rear platform; and they boarded the car at that end. The car could be boarded from either end and from either side. At the same time that they started to board the car a man, a woman and a girl, who had also been waiting for the car, were getting on to the same by way of the rear platform but from the opposite side. In starting to board the car Mc-

Luckie, one of the three boys, was ahead and got upon the platform; the appellee's brother followed next and also reached the platform just in the doorway leading thereto. These two halted there and did not press on to get inside of the car, as they testified, in order to give the persons getting on from the opposite side opportunity to pass into the car ahead. The appellee, following after his brother, got upon the steps leading up to the platform—he could not make it clear whether it was the first or second step nor whether there was another step before reaching the platform besides the one upon which he was standing—and while he was standing upon the steps the car was started. It proceeded one hundred and thirty-six feet when the appellee came into collision with a pole erected near the railway track and was injured. It appears from appellee's testimony that at the time he and his companions got to their respective positions upon the platform and steps of the car the woman and the girl had passed into the car and the man with them was going in the door from the platform. An Italian was upon the platform at or near the doorway leading from the platform into the car. The appellee's witnesses also testified the car was stopped about a half a minute; and that when it "came to this pole it could not have been going full force."

We will not stop to discuss the question whether or not it appears that the appellee was afforded reasonable opportunity to get in safety upon the car before it was started, as has been mentioned, nor to refer further to evidence bearing upon it to determine whether or not there was evidence of negligence in that regard. The starting of the car without affording this reasonable opportunity is the only negligence that is alleged or attempted to be shown or is suggested as being the cause of the accident to the appellee. In *Benedick* v. *Potts*, 88 Md. 52–4, this Court through the present Chief Justice said, "it is a perfectly well-settled principle that to entitle a plaintiff to recover in an action of this kind he must show not only that he has sustained an injury but that the defendant has been guilty of some negligence which produced that particular injury. The negligence alleged and the injury sued for must bear the rela-

tion of cause and effect.    The concurrence of both and *nexus* between them must exist to constitute a cause of action."

With the principle, here referred to in view, the present inquiry may be resolved into t' is, if the appellant's servants started the car upon the occasion here in question before the appellee had a reasonable opportunity to reach a safer place thereon than the one he occupied at the time of such starting, and in so doing were negligent, was *that the* negligence that produced the accident which caused the appellee's injuries? It is clear that the evidence adduced by the appellee affords no direct proof that the accident in question resulted from such negligence; and it would seem to be equally clear that by no rational inference therefrom can such accident be attributed thereto.    The appellee's proof shows that, by measurement, the pole that he collided with was, when the car was passing it, between seven and eight inches away from the side of the car.    The only description given of the manner of the accident appears in the testimony of the appellee and what he said was this, after having testified as to the boarding of the car by his brother and McLuckie, "then they got on I just reached up and was taking hold and that car was started and I could not get in for my brother and the others in front of me.    McLuckie was in front; I was waiting on the crowd to push in.    I had a bucket on my left arm; the bucket struck first, my head next, and I don't remember anything more." Then upon cross-examination he said "the pole hit my body; I was squeezed between the car."    He was asked on cross-examination if there was "not plenty of chance standing there on that step to stand in so that you would not hit anything" and answered "I was in far enough, but my bucket struck and dragged me back to the pole, my bucket struck the pole."

It was not so testified in terms, but it appears from the evidence of the appellee that when he got upon the step of the car he was facing towards the car with his back to the side of the track upon which the pole stood, and with his right side towards or in the direction of the pole with his bucket on his eft arm.    The evidence showed that he was struck by the

pole on the back of the head to the left.    As the doctor, who attended him, described it, "posterior aspect, left-hand side." As to his situation when the car started the appellee testified: Question. "You got upon the step." Ans. "Yes, sir." Ques. "You had a bucket in your hand." Ans. "On my arm." Ques. "You had your hand through." Ans. "Yes." Ques. "You were on the step." Ans. "With one foot; I was trying to get to the next step above." He further said on cross-examination that he had his "hands on the bars;" that he was pushing against his brother trying to get in the car. When examined in chief he said, "I tried to get up on the car fully; when I had the holt I tried to push in; the bucket being on my left arm it pulled me back."

It appears then from the appellee's own testimony that when the car started he was on the step of the rear platform of the car, facing towards the car, with his hands on the bars, his bucket on his left arm with his hand through, pushing against his brother who was upon the platform.    By no possibility in that situation could either his body or his bucket have come in contact, as the car proceeded, with a pole over seven inches away from the side of the car.    To bring him into collision with the pole something must have occurred to disturb or change the situation between the time the car started and the contact with the pole.    There is in this proof as has been said, no direct evidence that the position of the appellee, as he described it, was changed or affected by the starting of the car; and the testimony alluded to, unqualified as it is, affords no rational inference that the starting of the car changed his position from one of safety upon the step to one which would bring him into the collision that injured him.    The evidence also shows there was no other act on the part of the servants of the appellant as the car traversed the one hundred and thirty-six feet to the place of the pole that could have such effect.    We think the appellant's first prayer should have been granted.    This conclusion makes it unnecessary to discuss any others that were the subject of the appellant's exception. Allusion has been made to the fact that one of the appellee's

prayers had been conceded. This conceded prayer related only to the burden of proof upon the plaintiff, is not inconsistent with and does not embarrass the ruling here upon the first prayer of the appellant.

It follows from what has been said that the judgment below must be reversed.

> *Judgment reversed with costs to the appellant without awarding a new trial.*

(Decided November 23rd, 1905.)